BENJAMIN G. ARNOLD, and others, Plaintiffs, *v.* THE
PACIFIC MUTUAL INSURANCE COMPANY Defend-
ants.

*Policy of marine insurance — voyage described in — deviation from.*

The defendants issued to the plaintiffs a policy of marine insurance upon their
interest in a cargo of coffee from Santos to New York, Baltimore or Boston
direct, or, *via* Hampton Roads for orders. On June 28th, plaintiffs' agent in
Brazil chartered a vessel for a voyage from Santos to New York, Philadelphia
or Baltimore, *via* Hampton Roads for orders. Subsequently on plaintiffs'
application, defendant indorsed on the policy "Aug. 1, bark Eliza and Maria
from Santos to New York." The defendant had no knowledge of the charter
or the voyage.

The vessel arrived at Hampton Roads on August 25th, and remained waiting
orders from the plaintiff until September 13th, when she was struck by a
steamer and sunk, the cargo being destroyed. In an action to recover upon
the policy, *held*, that the indorsement upon it limited the voyage to a direct
one from Santos to New York, and, that the stoppage of the vessel at Hampton
Roads for such a length of time, no necessity being shown therefor, consti-
tuted a deviation and avoided the policy.

Motion for a new trial on exceptions, ordered at Circuit to be
heard at the General Term in the first instance.

*William G. Choate*, for plaintiffs.

*Joseph H. Choate*, for defendants.

Davis, P. J. :

This is an action upon a policy of marine insurance. A verdict
was rendered for the plaintiffs by direction of the court, and the
defendants' exceptions were ordered to be heard in the first
instance at the General Term.

But two important questions are presented by the exceptions.

The first arises upon the indorsement made upon the policy by
the defendants upon the report of the plaintiffs that the voyage of
the ship Eliza and Maria was from Santos to New York. It does
not seem that there would have been any doubt that the policy
would have attached immediately upon the lading of the coffee on

board at Santos, if the voyage provided for by the charter party had been within the terms of the policy; but it was not. The policy provides for voyages from Santos to New York, Baltimore or Boston direct, or, via Hampton Roads for orders. The voyage of this vessel, however, when she sailed from Santos was to New York, Philadelphia or Boston, via Hampton Roads for orders. We think it was evidently the purpose and intention of the parties that all shipments made by the plaintiffs at the ports of shipment mentioned in the policy to the ports of discharge therein mentioned, should be protected by insurance from the time of their lading. But a shipment to Philadelphia would clearly not have been within the policy.

The policy contained this provision : " Risks applicable hereto to be reported to this company for indorsement on the policy as soon as known to the assured."

The Eliza and Maria had in fact been chartered on the 28th of June by the plaintiffs' agents in Brazil for a voyage from Santos to New York, Philadelphia or Baltimore, via Hampton Roads for orders. On the first of August following, the plaintiffs having received advices of such shipment of the cargo from Santos, sent to the insurance company an application for indorsement upon the policy, in these words : " Enter on open policy to B. G. Arnold & Co., $18,279, gold, for one-sixth of goods as per policy value on $109,675, on board bark Eliza and Maria, from Santos to New York. New York, August 1st, 1872. One per cent." To this was subscribed the initials of the insurance brokers and of the vice-president of the defendants; and thereupon an indorsement was entered upon the policy in the words and figures following : " August 1st; bark Eliza and Maria from Santos to New York; amount insured, $18,279; rate of policy, 1 per cent.; amount of premium, $182.79; remarks, one-sixth."

The charter was not known to the defendants nor the voyage, so far as anything appears, otherwise than as described in the indorsement. The vessel arrived at Hampton Roads in safety, on the 25th of August, and there remained at anchor until the 13th of September, 1872, when she was destroyed with her cargo by being run down and sunk by a steamer. The captain's instructions from the plaintiffs' agent at Santos were to proceed to

Hampton Roads and await orders, and communicate with the plaintiffs in New York. On arriving at the Roads, he telegraphed to the plaintiffs that he had arrived and was there awaiting orders. He was instructed by the plaintiffs to remain there and await their instructions as to orders whither he should go to discharge his cargo. No further instructions were received by the master, and on the 12th of September, the plaintiffs directed him by letter, which was not received until after the loss of the vessel, to sail for New York on the 16th, unless in the meantime he should be advised by telegraph to the contrary.

During the interval after the arrival of the vessel in the Roads and the 13th of September, the plaintiffs were making diligent search to find a market for the cargo, but without success. It is claimed on the part of the defendants that the going to and lying at Hampton Roads, as above described, was a deviation from the voyage for which the vessel was insured fatal to a recovery, or, in other words, that the insurance was for the voyage indorsed upon the policy, from Santos to New York direct. We think the effect of the indorsement made under these circumstances upon the policy, was to define and restrict the same from Santos to New York direct, and that although the policy was an open one, and the rate of premium entered thereon in advance, nevertheless when the parties assured caused to be indorsed upon a policy a description of the voyage in the form above stated, the insurance became operative only upon such a voyage as was therein described. No other risk was reported and none other known to the insurance company. The sailing to Hampton Roads, and anchoring there for the period mentioned without any necessity being shown which would excuse the deviation, we think operated to relieve the defendants. It was a deviation not contemplated or allowed in the indorsement of the policy, and as a new port of destination, to wit, Philadelphia, not embraced in the policy was included in the charter party, the plaintiffs had a clear right to order the vessel to Philadelphia to discharge her cargo, while she was lying in Hampton Roads, and this would be a voyage not within the policy. If this right existed and the policy covered the cargo until her arrival at Hampton Roads, and the giving of orders to go to Philadelphia, then the insurance was terminated by such arrival,

for it can not be stated to be within the agreement of the defendants that the vessel might lie in Hampton Roads for a period of eighteen days till the plaintiff should exercise an option whether the voyage should finally be one within the policy or not.

We think the election of the voyage was made by the indorsement, and that that act alone brought this particular cargo within the terms of the policy. None of the cases cited are precisely analogous, although the principles which govern such a case seem to be well settled. (*Orient Mutual Ins. Co.* v. *Wright*, 23 How. U. S. Rep., 401, and cases cited.) As these views determine that the motion for a new trial should be granted, it is not necessary to consider the question whether the delay of eighteen days in Hampton Roads was also such a deficiency as would defeat the plaintiff's right to recover.

Exceptions sustained; new trial ordered with costs to abide the event.

BRADY, J., concurred.

Ordered accordingly.